## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CONRAD JAMES, | : | |
| | : | |
| Plaintiff, | : | CASE NO.: _____ |
| | : | |
| v. | : | |
| | : | |
| GENERAL MILLS OPERATIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

## **COMPLAINT**

Plaintiff Conrad James brings this action against Defendant General Mills Operations, LLC related to race discrimination, retaliation, and a racially hostile work environment.

## **PARTIES**

### 1.

James is a citizen of the United States and lives in Gwinnett County, Georgia, where he has resided at all times relevant to this suit. He submits himself to the jurisdiction of this Court.

### 2.

General Mills Operations, LLC, is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and may be served by

personal service of process upon registered agent National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

3.

Defendant is subject to the jurisdiction of this Court.

4.

Service and process are timely, valid, and appropriate in all respects.

## JURISDICTION AND VENUE

5.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

6.

James asserts race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq. ("§ 1981").

7.

Pursuant to 28 U.S.C. § 1391(b) and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for James' claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of

the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court.  *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

8.

General Mills is a covered employer under Title VII and 42 U.S.C. § 1981.

## GENERAL MILLS' RACE PROBLEM

9.

The East Department at General Mills' Covington location has a race problem.

10.

Operating at this location is a fraternity of all white males that call themselves "the Good Ole Boys" ("GOB").

11.

The members of the GOB include many individuals in leadership positions, such as process leads, operations managers, and HR personnel.

12.

The founders of the GOB are Jack Gillam (Site Maintenance Manager) and Greg Cantrel (East Plant Operations Manager).

3

13.

Several years ago, there was some acknowledgment that diversity was needed in leadership.

14.

In October 2020, after helping develop a particular manufacturing system, James was promoted to Team Lead.

15.

While in that role, GOB member Shane Cox was also in a Team Lead role. Cox frequently made racist comments about African American individuals' hair ("turds", "mop hair", "shit locks") and clothes ("yo boy yo pants", "streetwalker"), and he assumed that James was from the "hood."

16.

Cox has been counseled about being offensive on multiple occasions.

17.

When fellow GOB member Steve Jarva joined the company, his first task was to observe and take notes on a meeting regarding behavior that Cox needed to change.

18.

Cox, who, after promotion, is currently a Process Lead in the Roger Department, is a member of the GOB.

19.

Jarva, who was a Line Lead and James and Cox's direct supervisor before he was promoted, is a member of the GOB.

20.

Joe Powers, who replaced Jarva when he resigned, is a member of the GOB.

21.

Phil Thompson, who was Jarva's direct supervisor, is a member of the GOB.

## JAMES RUNS AFOUL OF THE GOB

22.

On or about March 28, 2005, James was hired by Defendant as a Technician.

23.

James identifies as black and African American.

24.

James worked on project teams, re-builds, installing Aagards, and innovating new practices to reduce and eliminate "stops" that reduce efficiency and production.

25.

James helped develop Project Roger, a sheeted twin screw system used to make a popular brand cereal.

26.

In October 2020, Project Roger came out of the project phase and began running.

27.

James and Cox were both Black Hats on the Roger Project and, when it came out of the project phase, James and Cox were both promoted to Team Leads in the Roger Department.

28.

In the first 45 days of the Roger Department being operational, James had to cover Cox's work duties while he was absent.

29.

In December 2020, James was given his first performance evaluation in the Team Lead role.

30.

James was given an unsatisfactory result for the December 2020 performance evaluation and each subsequent evaluation while his white counterparts were all given satisfactory evaluations.

31.

Cox was given a satisfactory result for the December 2020 performance evaluation even though James covered his work duties for the first 45 days that the Roger Department was operational.

32.

On or about November 16, 2021, Jarva held a training session in a side seam gluer ("SSG") machine with James' team of technicians.

33.

Jarva, who was hosting the training, failed to lock-out/tag-out the system, have a plan to do so, and/or instruct James' technicians that lock-out/tag-out had not been completed.

34.

Even though Jarva was responsible for the lock-out/tag-out failure, he wrote up James, who was not even in the training, and all of the black technicians on James' team.

35.

When Jarva wrote up the black technicians, he did not write-up (a) himself (white male), (b) James' only white technician, Sabrina Taylor, (c) the Process Lead, Stephanie Ramos (Hispanic female), or (d) the Maintenance Lead and Training Instructor, Shawn Walker (white male).

36.

Taylor, a white technician, committed the same infraction as the black technicians who were immediately written up.

37.

Jarva, Ramos, and Walker's violations were more significant or egregious because they are in leadership and/or training roles.

38.

Jarva wrote-up Sabrina Taylor only after receiving backlash about not writing up any white employees who committed the same infraction.

39.

James complained about the November 16, 2021 incident to HR and John Fox, who he believed to be a corporate representative but is instead responsible for HR at Defendant's Murfreesboro, Tennessee, location.

40.

Approximately three weeks after the lock-out/tag-out write-up incident, Jarva resigned.

41.

Shortly after Jarva resigned, James was informed that he was being demoted to Technician effective January 1, 2022.

42.

James – who helped design the system in the Roger Department – is now supervised by a less qualified white male who James trained.

43.

In July 2022, James applied for and was denied a position as Process Lead; a less qualified white male was chosen for the position instead.

44.

In August 2022, James applied for a Utility Maintenance position; a less qualified white male was selected for the position.

45.

In September 2022, James again applied for a Process Lead position but, this time, he was not given an interview; a less qualified white male was selected.

46.

In September 2022, James learned that Jarva was promoted to Operations Manager at General Mills' Murfreesboro location.

47.

After James' demotion, Cox was promoted from Team Lead to Process Lead.

## ADMINISTRATIVE PROCEEDINGS

48.

James timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

49.

On January 11, 2023, James received a notice of the right to sue.

50.

All administrative prerequisites for filing suit on James' claims have been satisfied.

51.

This suit is timely, appropriate, and valid in all respects.

## PUNITIVE DAMAGES ALLEGATIONS

52.

Defendant undertook all actions in this complaint intentionally, willfully, and maliciously with respect to James and his federally protected rights.

53.

Additionally, Defendant undertook all actions in this complaint with reckless disregard for James and his federally protected rights.

## COUNT ONE

### § 1981 Race Discrimination:  Failure to Promote

54.

James, who is a member of a racial minority, had an employment contract with Defendant.

55.

Defendant intended to and did discriminate against James on the basis of race.

56.

Defendant interfered with James' employment and took adverse employment actions against him that caused financial and other harm.

57.

James' race was a but-for cause of the adverse employment actions taken against him.  In other words, he would not have been demoted or passed over for promotions on three occasions, and, therefore, would not have suffered the loss of legally protected rights, if he was not black and African American.

58.

In addition to other facts that will be further explored in discovery, evidence that the adverse actions against James were the result of intentional race discrimination includes:

(a)   Jarva's write-up of James and all of his black technicians (but not the one white technician or other white employees involved);

(b)   James' demotion and Jarva's promotion;

(c)   James' demotion and Cox's promotion;

(d)   James' unsatisfactory performance evaluations in light of his white counterparts' satisfactory evaluations;

(e)   Defendant's decision to hire less qualified white males instead of James for open positions in July, August, and September 2022;

(f)   Defendant's decision to allow, or failure to prevent, the GOB to operate at its facility;

(g)    Defendant's decision to allow, or failure to prevent, the GOB to place members in leadership positions;

(h)    Defendant's decision to allow, or failure to prevent, GOB members to make, direct, or influence decisions about adverse employment actions on the basis of or influenced by racial animus; and

(i)    Defendant's continued employment of Cox in the face of Defendant's knowledge of his repeated racist comments.

59.

Defendant's discriminatory adverse employment actions against James interfered with his ability to enjoy the benefits, privileges, terms, and conditions of his contractual employment relationship.

60.

James is entitled to damages due to Defendant's violation of 42 U.S.C. § 1981.

## **COUNT TWO**

### Title VII Race Discrimination:  Failure to Promote

61.

James is a member of a class protected by Title VII.

62.

Defendant is a covered employer under Title VII.

63.

James was qualified for the job positions for which he applied.

64.

James was denied two requested promotions after interviews and was denied the third requested promotion without the opportunity to interview.

65.

Less qualified white males were selected for all three positions.

66.

James' race was a but-for cause of the adverse employment actions.

67.

James' race was a motivating factor for the adverse employment actions.

68.

James is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT THREE

### § 1981 Retaliation

69.

James engaged in statutorily protected activity by complaining of race discrimination in or around November 2021.

70.

Afterward, James was demoted then passed over for promotions or job advancements due to his race and engagement in statutorily protected activity.

71.

James' race and related engagement in statutorily protected activity was a but-for cause of the failure to promote and other adverse employment actions taken against him.   In other words, he would not have suffered adverse employment actions, and, therefore, would not have suffered the loss of a legally protected right, if he was not African American and had not engaged in the protected activity.

72.

Defendant's illegal adverse employment actions against James interfered with his ability to enjoy the benefits, privileges, terms, and conditions of his contractual employment relationship.

73.

James is entitled to damages due to Defendant's violation of 42 U.S.C. § 1981.

## **COUNT FOUR**

Title VII Retaliation

74.

James engaged in statutorily protected activity by complaining of race discrimination in or around November 2021.

75.

In July, August, and September 2022, James was passed over for promotions and advancements due to his race and related engagement in statutorily protected activity.

76.

James' race and related engagement in statutorily protected activity were but-for causes of the failures to promote.

77.

James' race and related complaints of discrimination were motivating factors for the adverse employment actions.

78.

James is entitled to Title VII damages because Defendant retaliated against him for engaging in statutorily protected activity.

## COUNT FIVE

### § 1981 Hostile Work Environment

79.

As a black African American man, James belongs to a protected group.

80.

James was subjected to unwelcome harassment due to his race.

81.

The harassment suffered by James was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  Examples of the harassment include:

(a)   Jarva's write-up of James and all of his black technicians (but not the one white technician or other white employees involved);

(b)   James' demotion and Jarva's promotion;

(c)   James' demotion and Cox's promotion;

(d)   James' unsatisfactory performance evaluations in light of his white counterparts' satisfactory evaluations;

(e)     Defendant's decision to hire less qualified white males instead of James for open positions in July, August, and September 2022;

(f)     Defendant's decision to allow, or failure to prevent, the GOB to operate at its facility;

(g)     Defendant's decision to allow, or failure to prevent, the GOB to place members in leadership positions;

(h)     Defendant's decision to allow, or failure to prevent, GOB members to make, direct, or influence decisions about adverse employment actions on the basis of or influenced by racial animus; and

(i)     Defendant's continued employment of Cox in the face of Defendant's knowledge of his repeated racist comments.

82.

Defendant is liable for the hostile work environment under either a theory of vicarious or of direct liability.

83.

The hostile work environment created by the Defendant interfered with James' ability to enjoy the benefits, privileges, terms, and conditions of his contractual employment relationship.

84.

James is entitled to damages due to Defendant's violation of 42 U.S.C. § 1981.

## **COUNT SIX**

### Title VII Hostile Work Environment

85.

As a black African American man, James belongs to a protected group.

86.

James was subjected to unwelcome harassment due to his race.

87.

The harassment suffered by James was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

88.

Defendant is liable for the hostile work environment under either a theory of vicarious or direct liability.

89.

The hostile work environment created by Defendant interfered with James' ability to enjoy the benefits, privileges, terms, and conditions of his contractual employment relationship.

90.

James is entitled to damages due to Defendant's violation of Title VII.

### PRAYER FOR RELIEF

WHEREFORE, James demands a TRIAL BY JURY and the following relief:

(a)   Declaratory judgment that Defendant's actions violated James' § 1981 and Title VII rights;

(b)   Full back pay from the date of the adverse employment action taking into account all raises to which James would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(c)   Reinstatement or front pay to compensate James for lost future wages, benefits, and pension;

(d)   Compensatory damages in an amount to be determined by the enlightened conscience of the jury for James' emotional distress,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(e)    Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(f)    Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward James and deter Defendant from similar conduct in the future;

(g)    Judgment against Defendant for damages incurred by James;

(h)    Judgment against Defendant in an amount to fully and adequately compensate James;

(i)    A trial by jury on all issues triable to a jury; and

(j)    Other and further relief as the Court deems just and proper.

Respectfully submitted this 11th day of April 2023.

BY:   /s/ Douglas Dean
          Georgia Bar No. 130988
          Attorney for Plaintiff
          Lawson, Reid & Dean, LLC
          601 East 14th Avenue (31015)
          Post Office Box 5005
          Cordele, Georgia  31010
          O: (229) 271-9323
          F:  (229) 271-9324
          E: *douglas.dean@lawsonreidlaw.com*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing COMPLAINT has been prepared with 13-point Book Antiqua font, which is one of the font and point selections approved by this Court in Local Rule 5.1(C).

This 11th day of April 2023.

BY:    /s/ Douglas Dean
Georgia Bar No. 130988
Attorney for Plaintiff
Lawson, Reid & Dean, LLC
601 East 14th Avenue (31015)
Post Office Box 5005
Cordele, Georgia  31010
T:  (229) 271-9323
F:  (229) 271-9324
E: *douglas.dean@lawsonreidlaw.com*